**Anthony Wayne Bar & Restaurant, Inc., Appeal**

*Sheldon Tabb,* for appellant.

SLOANE, P. J., September 30, 1966.—The Pennsylvania Liquor Control Board suspended the liquor license of the licensee for 30 days on findings that:

1. The licensee, by its servants, agents, or employes permitted disorderly or improper conduct on the licensed premises, on July 31, August 31 and September 15, 1965.

2. The licensee, by its servants, agents or employes permitted dancing on the licensed premises without first procuring an Amusement Permit from the Pennsylvania Liquor Control Board, on July 31, 1965.

On appeal to this court, the case was heard de novo.

The principal witness for the board was Enforcement Officer Paul M. Fenstermaker, who visited the licensed premises on six occasions, on three of which he found no violations of the Liquor Code. On July 31, 1965, Officer Fenstermaker entered the premises at about 7:30 p.m. About 15 male patrons were in the bar; no women were present. He saw two male patrons dancing together, and another, called Bernie, dancing alone, simulating a female stripper, shaking his hips and kicking his legs. The bartender did nothing to stop this dancing. The board's finding No. 2 is supported by the evidence.

The officer furthermore observed Bernie kissing another male patron, using his tongue. At the bar patrons were feeling each other's private parts and laughing. The bartender joined in the laughter.

On August 31, 1965, Officer Fenstermaker entered the premises at 10 p.m. where 29 male patrons were

present. The officer testified that several patrons winked at him, and one, a man called Don, spoke of a boy he had spent the night with the preceding night and also spoke at some length about his former steady boyfriend. This conversation took place in normal voices and the bartender was not more than a few feet away.

On September 15, 1965, the officer visited the licensed premises at 8:30 p.m. finding 20 men customers present; no women. The patron Bernie was again present and solicited drinks from the other patrons. The bartender admonished Bernie for soliciting drinks, but other customers did buy for him and the bartender served them. An off-duty bartender asked Officer Fenstermaker how he had learned about the place, to which the officer replied that he had heard about it "in another gay bar". Bernie hugged the officer as he was leaving the premises.

The licensee presented credible testimony to the effect that the manager of the bar was unaware of any of these activities; that he was regularly absent during the hours of the officer's visits; that, on learning of Bernie's behavior, gave orders that Bernie was not to be admitted or served; that the bartender who actually participated in the disorderly conduct is no longer employed; and that active steps have been taken to avoid recurrence of this kind of behavior. Nevertheless, this evidence does nothing to disprove the occurrence of the events described by Officer Fenstermaker. Nor, since a bartender was present at all times, does it contradict the finding that the licensee, "by its servants, agents or employees permitted disorderly or improper conduct on the licensed premises, on July 31, August 31 and September 15, 1965". The evidence fully supports the board's first finding of fact.

Appellant urges that the licensee is not legally responsible for violations committed by employes in the

absence of the licensee and without the licensee's knowledge and contrary to his express orders, citing Appeal of Sons of Italy, 21 Cambria 163 (1960). The cited case indeed modified a suspension when violations were found to be merely isolated, apparently because the licensee had an unusually good record, but the court also declared:

"There can be no doubt but that the holder of a liquor license is responsible for the acts of his employees and may not escape suspension of his license by seeking to place the responsibility for violations on them, . . . even though there is no direct evidence that he knew of such violations".

The leading case is Commonwealth v. Koczwara, 397 Pa. 575, in which the Supreme Court of Pennsylvania held that a licensee, by accepting the license, assumes criminal responsibility for acts committed by his employes upon his premises in his absence if the acts violate section 493 of the Liquor Code. In the instant case, the second finding violates subsection (14) of section 493. See also Bayer Liquor License Case, 200 Pa. Superior Ct. 210; Southern Outing Club of Pittsburgh Liquor License Case, 166 Pa. Superior Ct. 555; Easton's Liquor License Case, 142 Pa. Superior Ct. 49.

The order of the Liquor Control Board is affirmed.